IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARIO LACHICA,

        Plaintiff,

    v.                                     No. 19-4044-SAC

RUSSELL STOVER
CHOCOLATES, LLC,

        Defendant.


MEMORANDUM AND ORDER

      The plaintiff Mario Lachica ("Lachica") brings this Title VII employment discrimination case claiming the defendant Russell Stover Chocolates, LLC ("Russell Stover"), unlawfully terminated his employment based on his race and ethnicity and in retaliation for complaining about his supervisor's treatment of him. Russell Stover moves for summary judgment on all claims arguing that Lachica's only viable claim of adverse action is his termination, that the uncontroverted evidence establishes he was terminated for inappropriate conduct toward female co-workers, and that no question of material fact exists concerning any discriminatory animus in the termination decision. The defendant also argues that its agents responsible for deciding to terminate Lachica did not have prior knowledge of any alleged protected activity. Thus, Russell Stover seeks summary judgment because Lachica's evidence fails to state prima facie cases for discrimination or retaliation and is also insufficient for the jury to disbelieve the defendant's reasons for terminating him. The plaintiff counters that his evidence is more than enough to survive summary judgment.

1

SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding the motion, the court's role is "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. The court may grant summary judgment for lack of a genuine issue when the evidence is insufficient "for a jury to return a verdict," when "the evidence is merely colorable," or when the evidence "is not significantly probative." *Id.* It follows then that a genuine issue for trial exists when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden is met "by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler*, 144 F.3d at 671. The burden then shifts to the nonmovant to "go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational fact finder could find for the nonmovant." *Id.* (internal quotation marks and citations omitted). Such facts "must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

The court applies this standard drawing all inferences arising from the record in the nonmovant's favor. *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1216 (10th Cir. 2003). The court does not make credibility determinations or weigh the evidence; these are jury functions. *Id.* at 1216. The Tenth Circuit has counseled the following for summary judgment proceedings in employment discrimination cases:

> [I]n the context of employment discrimination, "[i]t is not the purpose of a motion for summary judgment to force the judge to conduct a 'mini trial' to determine the defendant's true state of mind." *Randle v. City of Aurora*, 69 F.3d 441, 453 (10th Cir. 1995). Many of the highly fact-sensitive determinations involved in these cases "are best left for trial and are within the province of the jury." *Id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[T]he inquiry [at summary judgment is] whether the evidence presents a sufficient disagreement to require submission to a jury...."). Consequently, "in this Circuit . . . an employment discrimination suit will always go to the jury so long as the evidence is sufficient to allow the jury to disbelieve the employer's [explanation for the alleged misconduct]." *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1177 (10th Cir. 1998) (Tacha, J., concurring in part); *see Randle*, 69 F.3d at 452 ("[I]f . . . inferential evidence is sufficient to allow a plaintiff to prevail at trial, it is surely sufficient to permit a plaintiff to avoid summary judgment so that the plaintiff can get to trial.").

*Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1220-21 (10th Cir. 2015).

FACTS

The court finds the following statement of facts to be uncontroverted after considering the objections and citations submitted by the parties. The court's reasons for its findings and its rulings on any objections will only be explained for those matters critical to the summary judgment decision. The court regards its reasons and rulings on all matters to be evident from whether and how the facts are stated herein.

From 2000 to 2005, the plaintiff Lachica worked at Russell Stover's factory in Abilene, Kansas ("first stint"). In early 2016, Lachica applied for a machine

operator opening at the same plant. Tracy Jacobs, a supervisory employee for Russell Stover, interviewed Lachica and then offered him the job. Lachica started working on February 16, 2016, as an RFC/Hutt Operator. Until he was discharged in July of 2018, Lachica held this same job working always under the direct supervision of Tracy Jacobs.

In his deposition, the plaintiff admitted his complaint alleges that the only person working for Russell Stover who treated him unfairly during his employment based on race or national origin was Tracy Jacobs. He further admitted that as of his deposition he could not identify anyone else who had so discriminated against him. The plaintiff was not the only Hispanic or Mexican employee supervised by Jacobs. Approximately 25 Hispanic or Mexican employees were under her supervision from January 1, 2016, through December 31, 2018. The plaintiff adds that 70% (17 of 25) of these employees had their employment terminated during the same period. In reply, the defendant notes that 12 of those 17 employees were not involuntarily terminated. During that same three-year time period, Jacobs terminated approximately 68 employees, but only Lachica and a female employee were terminated for reasons other than attendance or job abandonment.

Of the 25 Hispanic or Mexican employees supervised by Tracy Jacobs, Lachica is the only one who reported being treated differently by Jacobs. Six of these 25 employees worked as RFC/Hutt Operators under Jacobs, and Lachica is the only one who received written corrective action. The plaintiff purports to controvert these statements with the affidavit of Daniel Hernandez. The affidavit, however, fails to show other reported instances of disparate treatment or written corrective actions

4

taken by Jacobs. The affidavit of Hernandez adds the conclusory statement that Jacobs or the plant manager "would reprimand" Lachica and Hernandez for speaking Spanish in non-work-related conversations. ECF# 26-10, p. 2. Hernandez does not aver that he or Lachica reported this treatment or received any written corrective action. In fact, Hernandez does not aver any details to show what constituted a reprimand, when the reprimand occurred, and how Jacobs or Nienstedt would have known they were reprimanding Lachica and Hernandez for non-work-related conversations. ECF# 26-10, p. 2.

In Lachica's performance reviews, Jacobs graded him as meeting or exceeding expectations in his job performance with his strengths being attendance and working well with others. While Lachica enjoyed several increases in his wage and never suffered a reduction, Jacobs did document Lachica's job weaknesses as wandering from the production line and not staying busy. Jacobs explained that when Lachica's line would go down, he would wander off and talk with others instead of cleaning. He would most often talk with female co-workers. Another supervisor complained to Jacobs that Lachica was stopping by her production area and distracting her workers.

Lachica received an Employee Counseling Report dated January 10, 2018, which he and Jacobs signed. The Report cites Lachica for having violated the guideline against unacceptable workplace conduct on November 21, 2017, by engaging "in a conversation with a co-worker about her body appearance" that "ended in . . . [him] admitting to her that . . . [he] thought she was fat." ECF #26-6, p. 2. Lachica testified in his deposition that when the female co-worker asked him if

she looked fat, he answered, "a little bit." ECF #25-1, p. 13. On November 27, 2017, Jacobs verbally counseled Lachica about this incident approximately a week after it occurred. Weeks later, the plant superintendent Byron Nienstedt told Jacobs that Lachica's conduct warranted additional disciplinary action. As a result, Jacobs and Lachica then met in January of 2018 as described in the Employee Counseling Report. Jacobs attributed some of the the delay between the event and disciplinary action to Lachica being off work due to lack of production. The plaintiff responds that there is an evidence that the female co-worker involved in this incident also said disparaging things to him at the same time but was not similarly disciplined.

In May 2018, the defendant determined that Lachica violated Work Rules #1 and #17 by returning from lunch late and then deciding to mix certain ingredients contrary to Russell Stover's purposes that resulted in an unusable product and financial loss. The plaintiff admits committing both violations. When deposed, Lachica identified no other employees who had wrongly mixed ingredients resulting in an unusable product. Nor was Lachica aware of whether non-Hispanic or non-Mexican employees received written warnings for returning late from breaks.

As averred by the Human Resources Manager ("HRM") at Russell Stover, Janelle Rogers, in December of 2017, a female employee reported to Russell Stover that Lachica had commented about her breasts and, on "one occasion called out her name and when she directed her attention to him," he said to "suck this." ECF# 25-2, p. 4, ¶ 15. In his deposition, Lachica denied that this event happened and said he could not remember Jacobs discussing these allegations with him.

Jacobs testified she only requested Lachica to speak English when he worked with an English-speaking partner on the line. Lachica testified, however, that Jacobs frequently told him not to speak Spanish in the workplace but that she never disciplined him for speaking Spanish. Lachica also testified that Jacobs never made a discriminatory or derogatory remark to him related to his race or national origin. In his deposition, Lachica testified several times that he had complained during his employment to management that Jacobs had treated him unfairly, but that he had not told management this mistreatment was due to race or national origin. One of those times, Lachica did testify remembering, "he thinks that he might have even told Tracy [Jacobs] at one point that . . . she treats him like that because he's Hispanic and she doesn't say that to the white people." ECF# 26-1, p. 47. But in a follow-up question, "That he might have said that to Tracy but can't recall one way or the other, correct?", Lachica answered, "Yes. Yeah, he doesn't recall." *Id.* Lachica used an interpreter during his deposition and testified that he had requested one during his meetings with Jacobs, but one was never provided.

A female co-worker, Katie Wegner, wrote up and signed a complaint dated July 18, 2018, against Lachica. The complaint reads that he came up from behind and put his hands on Wegner and came too close to her. She also complained that Lachica "calls her baby," says "sexual things," tries to give her "his number," and makes her uncomfortable for refusing his advances. ECF# 25-2, p. 25. On the same day, Marilyn Mack wrote and signed a statement having witnessed this encounter. She wrote that Lachica grabbed Wegner by her waist, "got really close like he was going to kiss her," and "whispered something in her ear." ECF# 25-2, p. 26. As

7

he walked away, he said, "okay have a good day baby." *Id*. Mack observed that Wegner looked as if she wanted to cry, so she encouraged Wegner to report Lachica. *Id*. According to Lachica, he happened to be walking by Wegner when he noticed she was falling asleep at her work, so he came up next to her and asked if she was okay. He denies ever touching her or getting closer than several feet. Wegner testified that Lachica did ask whether she was okay or needed to wake up.

The defendant's HRM, Janelle Rogers, investigated the complaints of Wegner and Mack and reviewed Lachica's personnel records. Rogers found that during Lachica's first stint of employment at Russell Stover (2000 to 2005) several women accused him of harassment that included "unwanted physical touching and/or inappropriate remarks that made them uncomfortable." ECF# 25-2, p. 4. These complaints resulted in the issuance of two documented warnings against Lachica. Rogers also found the reported incidents from November and December of 2017 discussed above.

Rogers consulted with plant superintend Nienstedt who had interviewed Lachica regarding the complaints from Wegner and Mack. Rogers found that Lachica's behavior toward Wegner was deserving of serious discipline alone. But that after considering recent reports of his conduct in November and December of 2017, his recent re-acknowledgement of the defendant's sexual harassment policy, and his documented history of similar behavior during this first stint of employment, Rogers believed Lachica should be terminated. Nienstedt agreed with Rogers, and Jacobs was not consulted nor provided any input into the decision to terminate Lachica.

In his deposition, Lachica testified that he tried several times to speak to HRM Rogers about Jacobs' unfair treatment of him. The front desk personnel refused to make an appointment for him and directed him to speak first with the plant superintendent Nienstedt. Approximately one month before he was fired, he went to HRM Rogers to request an appointment to complain about Jacobs yelling at him. While he was waiting, Jacobs approached him and asked what he was doing. Lachica told Jacobs that he was there to talk with HRM Rogers about how Jacobs was treating him. Lachica saw the plant manager going into the bathroom, so Lachica followed and complained to him about Jacobs' mistreatment. The manager said that Nienstedt would follow up. Nienstedt then met with Lachica and Jacobs but without an interpreter present. Lachica said that Jacobs treated him better for a couple days after this meeting.

The plaintiff submitted his own statement of facts. To the extent material and supported by the summary judgment record, they have been incorporated above.

GOVERNING LAW

Under Title VII, it is unlawful "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "To survive summary judgment on a Title VII claim of discrimination based on race, color, religion, sex, or national origin, a plaintiff must present either direct evidence of discrimination or indirect evidence that satisfies the burden-shifting framework of *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019). Because he concedes having no direct evidence of discrimination, the plaintiff must follow the *McDonnell Douglas* framework. This means the "plaintiff must first raise a genuine issue of material fact on each element of the prima facie case, as modified to relate to differing factual situations." *Bekkem*, 915 F.3d at 1267 (internal quotation marks and citation omitted). "The burden then shifts to the employer to offer a legitimate nondiscriminatory reason for its employment decision." *Id.* "If the employer does so, the burden then reverts to the plaintiff to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e., unworthy of belief." *Id.* At this last stage, the court is to "consider the evidence of pretext in its totality." *Fassbender v. Correct Care Solutions, LLC*, 890 F.3d 875, 884 (10th Cir. 2018).

ANALYSIS

### Discrimination—Prima Facie Case

The plaintiff bears the burden of making a prima facie case of discrimination which "must consist of evidence that (1) the victim belongs to a protected class; (2) the victim suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination." *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007). The burden of making a prima facie case "is not onerous," "is one of production, not persuasion," and "involve[s] no credibility assessment." *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005) (internal quotation marks and citations omitted). While

the prima facie case serves primarily to eliminate "the most common

nondiscriminatory reasons" for the adverse employment action, it still must function

as a critical inquiry into "whether the plaintiff has demonstrated that the adverse

employment action occurred under circumstances which give rise to an inference of

unlawful discrimination." *Plotke*, 405 F.3d at 1099-1100 (internal quotation marks and

citations omitted). Possible circumstances could include:

> actions or remarks by decisionmakers that could be viewed as reflecting a
> discriminatory animus, . . ., preferential treatment given to employees outside
> the protected class . . . . A plaintiff might also rely . . . upon the timing or
> sequence of events leading to plaintiff's termination.

*Id.* at 1101.

Russell Stover first argues that Jacobs' actions in yelling and scolding the

plaintiff are not adverse employment actions. Instead of opposing this argument,

Lachica effectively concedes it by only responding that his termination is an adverse

action. The plaintiff comes forward with no arguments showing how Jacobs'

treatment of him constituted adverse employment actions. It is not this court's duty

to make these arguments or assume them on behalf of the plaintiff. As these matters

have been briefed and presented to the court, Russell Stover is entitled to summary

judgment on Lachica's claim of race or national origin discrimination for Jacobs'

unfair supervision and treatment of him.

In the "canonical case" of a plaintiff employee's discharge, the Tenth

Circuit has held the plaintiff must show the following for a prima facie case:  "(1) he

belongs to a protected class; (2) he was qualified for his job; (3) despite his

qualifications, he was discharged; and (4) the job was not eliminated after his

discharge." *Singh v. Cordle*, 936 F.3d 1022, 1037 (10th Cir. 2019) (internal quotation

marks and citation omitted). The court is satisfied from the summary judgment record that the plaintiff has made this simple prima facie case which eliminates the most common reasons for a non-discriminatory discharge and gives rise to a simple inference of discrimination. The balance of Russell Stover's arguments on this discrimination claim fall within its non-discriminatory business reasons for the termination and the plaintiff's efforts at proving pretext. *See Orr v. City of Albuqueque*, 417 F.3d 1144, 1149 (10th Cir. 2005).

### *Discrimination—Termination—Business Reason and Pretext*

For its legitimate, non-discriminatory business reason for Lachica's termination, Russell Stover has offered evidence that it honestly believed the plaintiff engaged in a pattern of conduct that violated its sexual harassment policy. As outlined above, HRM Rogers, investigated the complaints of Wegner and Mack and also reviewed Lachica's personnel records from his first stint of employment which included several complaints of harassment and two documented warnings. Rogers also knew of Lachica's employee counseling report from the November 2017 incident and the complaint for a December 2017 incident both of which involved Lachica making comments about the physical appearances of female coworkers. While believing that Lachica's behavior toward Wegner justified serious discipline on its own, Rogers decided Lachicha should be terminated because of his reported conducted in November and December of 2017, because of his recent re-acknowledgement of the defendant's sexual harassment policy, and because of his documented past of similar behavior from his first stint of employment. Rogers spoke with Nienstedt who agreed with the decision to terminate. Jacobs was not consulted nor provided any input into

the decision to terminate Lachica. The court is satisfied that Russell Stover has come

forward with a legitimate, non-discriminatory reason for terminating the plaintiff.

To avoid summary judgment on a pretext theory, the plaintiff must

come forward with a genuine issue of material fact that Russell Stover's stated reason

was not the true reason for his discharge. The Tenth Circuit has said:

> A plaintiff can meet this burden to show pretext in either of two ways: (1) by
> showing that the proffered reason is factually false or (2) by showing that
> discrimination was a primary factor in the employer's decision, which is often
> accomplished by revealing "weaknesses, implausibilities, inconsistencies,
> incoherencies, or contradictions in the employer's proffered reason[ ]," such
> that a reasonable fact finder could deem the employer's reason "unworthy of
> credence." *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th
> Cir.2002) (quotations omitted).

*Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1218 (10th Cir. 2013). When it comes to assessing

the plaintiff's evidence on summary judgment, the Tenth Circuit offers this guidance

as well:

> In assessing evidence of pretext, "we examine the facts as they appear to the
> person making the decision," taking care not to "second guess the business
> judgment of the employer." *Selenke v. Medical Imaging of Colorado*, 248 F.3d
> 1249, 1261 (10th Cir. 2001) (citation and internal quotation marks omitted).
> The evidence must create a factual issue that the "employer didn't really
> believe its proffered reasons for [the] action and thus may have been pursuing
> a hidden discriminatory agenda." *Johnson v. Weld County, Colo.*, 594 F.3d
> 1202, 1211 (10th Cir. 2010) (emphasis added). Thus, rather than ask whether
> the employer's stated reasons were "wise, fair or correct," we inquire whether
> the employer "honestly believed those reasons and acted in good faith upon
> those beliefs." *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 971 (10th Cir.
> 2017) (citation omitted).

*Sasser v. Salt Lake City Corp.*, 772 Fed. Appx. 651, 658 (10th Cir. 2019) (unpub). The

court is not to deny summary judgment on the "mere conjecture" that the employer's

reasons are a pretext for intentional discrimination. *Branson v. Price River Coal Co.*,

853 F.2d 768, 772 (10th Cir. 1988). The Tenth Circuit also has recognized that the

plaintiff's evidence of pretext maybe insufficient to create an inference of discrimination:

> However, it is not *always* permissible for the factfinder to infer discrimination from evidence that the employer's explanation is unworthy of belief. "[I]f the record conclusively revealed some other, nondiscriminatory reason for the employer's [adverse employment] decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," the fact that the employer's explanation was unworthy of belief would no longer be sufficient to create an inference of discrimination. [*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133,] Id. at 148, 120 S.Ct. 2097 [(2000)]. The same reasoning applies to a plaintiff's attempts to show pretext through evidence of differential treatment; if the employer's differential treatment of similarly-situated employees is "trivial or accidental or explained by a nondiscriminatory motive," such treatment is insufficient to create an inference of discrimination. *Kendrick* [*v. Penske Transp. Services, Inc.*], 220 F.3d [1220] at 1232 [(10th Cir. 2000)].

*Swackhammer v. Sprint/United Management Co.*, 493 F.3d 1160, 1168 (10th Cir. 2007). Thus, "where the evidence of pretext supports only nondiscriminatory motives, such an inference is logically precluded and summary judgment for the employer is appropriate." *Id.* (citation omitted).

Russell Stover first argues that the plaintiff is unable to create a genuine issue of material fact on pretext, because the plaintiff has not alleged that either decisionmaker, Rogers and Nienstedt, harbored a discriminatory motive against him. In his summary judgment response, Lachica contends that Nienstedt "was the actual individual who made the key decisions regarding Mario's discipline and eventual termination." ECF# 26, p. 20. Russell Stover objects that the plaintiff for the first time is alleging discriminatory animus against Nienstedt and that this accusation is "entirely inconsistent with his statements in the pretrial order." ECF# 31, p. 33. The plaintiff's contentions in the pretrial order do mention Jacobs for her treatment of

14

him and for treating "Hispanics and other minorities differently than the white employees," (ECF# 23, p. 3). These contentions, however, do not mention Nienstedt by name or position and do not include any express allegations of discrimination against Nienstedt. Russell Stover asks the court to restrict plaintiff to his allegations against Jacobs on discriminatory treatment and animus. "A plaintiff cannot escape the binding effect of the pretrial order by raising new issues in a response to the defendant's motion for summary judgment." *Sunderman v. Westar Energy, Inc.*, 520 F. Supp. 2d 1269, 1278 (D. Kan. 2007) (quoting *Robleado v. Deffenbaugh Indus.*, 136 F. Supp. 2d 1179, 1189 E. Kan. 2001), *aff'd*, 33 Fed. Appx. 480 (10th Cir. Apr. 24, 2002)), *aff'd*, 307 Fed. Appx. 224 (10th Cir. Jan. 14, 2009). Balanced against this is the court's duty to construe liberally a pretrial order so as "to cover any of the legal or factual theories that might be embraced by its language." *Id.* (quoting *Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1220-21(10th Cir.), *cert. denied*, 531 U.S. 926 (2000)). Even if the pretrial order could have been more complete and clearer, the court is satisfied that it adequately preserves the plaintiff's termination claim against Russell Stover based on race and national origin. The plaintiff's contentions do not purport to identify the defendant's decisionmakers behind his termination. The parties apparently were content with this omission. In this context, the court will not find that the plaintiff is contradicting or amending the pretrial order by alleging Nienstedt acted with a discriminatory animus.

As for evidence of pretext, the plaintiff points to what he alleges is evidence of differential treatment. The plaintiff's allegations and evidence about such treatment are largely aimed at his supervisor Jacobs. Indeed, in his deposition,

the plaintiff testified that his complaint identified only Jacobs as treating him unfairly based on race or national origin and that as of the deposition he could not identify anyone else with Russell Stover who treated him unfairly due to his race or national origin. ECF# 26-1, p. 3. The plaintiff does not argue or present any proof in support of a "cat's paw" theory for making Russell Stover liable for discriminatory termination based on Jacobs' acting on a discriminatory animus that proximately caused his termination. *Singh v. Cordle*, 936 F.3d at 1038. For that matter, there is no evidence that Jacobs contributed to or was involved with the termination decision. Thus, the plaintiff's evidence concerning what Jacobs said or did fails to create a genuine issue of material fact over pretext.

The plaintiff purports to offer evidence of differential treatment by Nienstedt. The affidavit of Daniel Hernandez mentions Nienstedt just once: "Mario and I would often speak to each other in Spanish for non-work-related conversations and Tracy Jacobs or Byron Nienstedt would reprimand us for it and tell us to speak in English." ECF# 26-10, p. 2. Hernandez also avers that he observed Lachica treated rudely and differently from white co-workers for being late, but he does not mention or identify Nienstedt as doing or being involved in this disparate conduct. For that matter, the affidavit of Hernandez is utterly lacking in factual detail providing no dates, names or circumstances. The affidavit is little more than conclusory assertions that do not connect Nienstedt to any of those actions. The court fails to see how Nienstedt's "reprimand" for non-work-related conversations in Spanish is anything more than accidental and otherwise consistent with a non-discriminatory motive.

The plaintiff argues the circumstance of Nienstedt directing Jacobs to take disciplinary action in January of 2018, or nearly seven weeks after Lachica's made the inappropriate comments in November of 2017. Again, this circumstance fails to generate an inference of a discriminatory motive particularly when management had received a complaint against Lachica for another incident in December of 2017. The plaintiff fails to show how the intervening delay is more consistent with pretext than with the plant's holiday shutdown. The plaintiff offers no evidence pointing to how this circumstance is unusual, inconsistent with or contrary to Russell Stover's policies and practices in dealing with such matters. Jacobs' testimony does not support about this delay does not support any such inference of pretext. The plaintiff also points to the fact that the female co-worker who was the subject of his name-calling in November of 2017 also called him "names" and was not disciplined. Of course, the plaintiff does not offer evidence that he complained about being called names such that it would have become part of any disciplinary incident. These circumstances do not evidence inconsistencies or contradictions in the employer's enforcement of its policies as to create an inference of unlawful discrimination.

While the plaintiff has testified to his different reason for coming close to Wegner, the issue for pretext is whether Russell Stover in good faith believed the complaints received from Wegner and Mack based on the investigation conducted by Rogers and Nienstedt and based on Rogers review of Lachica's personnel file. The plaintiff's arguments and evidence fail to undermine the decisionmakers' good faith and non-discriminatory reasons for discharging him. The plaintiff offers no evidence for why Rogers or Nienstedt would have any reason for discrediting Wegner's

complaint that was corroborated by Mack particularly after Rogers' investigation that followed immediately. Any asserted inconsistencies or confusion in Wegner's deposition testimony or the credibility findings by the unemployment hearing officer are not evidence, assuming admissibility, of pretext. The plaintiff offers no evidence of any policies or practices violated or ignored during Rogers' investigation and execution of the decision to terminate Lachica based on the good faith belief that Lachica had violated Russell Stover's sexual harassment policy. The defendant is entitled to summary judgment on the discrimination claim.

*Retaliation—Prima Facie Case*

The pretrial order reflects the plaintiff asserts a claim of "Retaliation in violation of Title VII (Count III) because he made complaints about his supervisor and was subsequently terminated." ECF# 23, p. 6. The plaintiff's factual contentions in the pretrial order refer to only one instance of him making any complaint, and it was against Jacobs as here quoted:

> In May of 2018, Mr. Lahica went to the HR office to attempt to make a complaint about Ms. Jacobs. On the way out, Mr. Lachica ran into Ms. Jacobs and she asked why he had been in the HR office. Mr. Lachica replied that he had a complaint about Ms. Jacobs that needed to be addressed, and she then walked into the HR office while Mr. Lachica returned to the line.

*Id.* at 4. The plaintiff's complaint alleges no other protected activities than this one attempted complaint. Lachica has testified that approximately a month before his termination, he went to HRM Rogers to request an appointment to complain about Jacobs yelling at him. While waiting for the appointment, Jacobs approached Lachica and asked what he was doing. Lachica said he was there to talk with HRM Rogers about Jacobs' treatment of him. Lachica apparently aborted those plans and followed

the plant manager whom he saw going into the bathroom. Lachica complained to the manager about Jacobs' mistreatment, and the manager told Lachica that Nienstedt would follow up. Nienstedt did meet with Lachica and Jacobs but without an interpreter present. Lachica said that Jacobs treated him better for a couple days after this meeting.

While Lachica did testify that he complained about Jacobs several times to management, it is uncontroverted that he never complained that Jacobs' mistreatment was due to his race or national origin. There is one instance in his deposition when Lachica said that he "might" have complained to Jacobs that her treatment was discriminatory, but he eventually answered that he "doesn't recall" the incident. ECF# 26-1, p. 47. It is also uncontroverted that Jacobs supervised approximately 25 Hispanic or Mexican employees while Lachica was employed from January 1, 2016, through December 31, 2018. Of these employees, Lachica is the only one who reported being treated differently by Jacobs.

Asserting no direct evidence of retaliation, Lachica must offer the following prima facie case of retaliation:  "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Tabor v. Hilti, Inc.*, 703 F.3d at 1219. Russell Stover seeks summary judgment because the plaintiff did not engage in protected activity, because his complaints were only about Jacobs' treatment without mentioning or implicating that this treatment was based on his race or national origin. The defendant cites abundant authority from this circuit

recognizing that complaints about a supervisor's mistreatment will not constitute protected activity when the complaints do not indicate a discriminatory motive or basis.

Complaints regarding work-place conduct or procedures that are unrelated to race or national origin, are not protected activities under Title VII, and will not satisfy the first prong of the prima facie requirements for retaliation. *See Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1202-03 (10th Cir. 2008) ("General complaints about company management and . . . negative performance evaluation" without mentioning or alluding to a discriminatory basis are insufficient.) "Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful." *Id.*

The case law within this circuit establishes that the plaintiff cannot establish protected activity on the facts of this summary judgment record. *See e.g., McElroy v. American Family Ins.*, 630 Fed. Appx. 847, 851 (10th Cir. 2015) (Commenting that a supervisor's behavior is "discriminatory" without mentioning a characteristic listed in Title VII fails to establish a protected comment); *Macias v. Southwest Cheese Co., LLC*, 624 Fed. Appx. 628, 639-40 (10th Cir. 2015) (Requesting a transfer because the plaintiff's supervisor "was making her life miserable" constitutes complaints only about the supervisor without suggesting an unlawful discriminatory basis and, therefore, are insufficient to state a prima facie case of retaliation); *Rangel v. Sanofi aventis U.S., LLC,* 507 Fed. Appx. 786, 791 (10th Cir. Jan. 14, 2013) ("Although 'protected activity' can include voicing informal complaints to supervisors,

see *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir.2004), 'to qualify as protected opposition, the employee must convey to the employer his or her concern that the employer has engaged in [an unlawful] practice.' *Hinds*, 523 F.3d at 1203." Thus, complaints that a supervisor's gave unfair and harsh criticisms is not protected opposition.); *Faragalla v. Douglas County School Dist. RE 1*, 411 Fed. Appx. 140, 148 (10th Cir.2011) ("[A]n employee's complaints regarding unfair treatment, no matter how unconscionable, cannot be 'protected opposition to discrimination' unless the basis for the alleged unfair treatment is some form of unlawful discrimination in violation of Title VII." (citation omitted)(Plaintiff's complaints of "feeling demeaned by … yelling and finger pointing and being given a heavier workload than" others, and "reports of being harassed, intimidated, scrutinized, and verbally attacked at work" "harassment" by others, or that a performance improvement plan was "retaliatory and discriminatory" failed to make any reference to discrimination or harassment on an unlawful ground); *Didier v. Abbott Laboratories*, 21 F.Supp.3d 1152, 1172 (D. Kan. 2014) (Complaint about being treated differently from other employees without reference to a prohibited basis is not protected opposition), *aff'd,* 614 Fed. Appx. 366 (10th Cir. Jul. 31, 2015). The plaintiff's evidence fails to create a genuine issue of fact over whether he ever complained that Jacobs' treatment of him constituted some form of unlawful discrimination.

The court summarily denies the plaintiff's argument of protected activity based on requesting an interpreter. First, the plaintiff's argument is not connected to any claim stated in the pretrial order. Second, the plaintiff has cited no authority showing that such a request is protected activity under Title VII. Third, this

case has no legal connection to the only authority cited by the plaintiff, *Pierce v. District of Columbia*, 128 F.Supp.3d 250, 281 (D.D.C. 2015), where a deaf inmate's request for an American Sign Language interpreter was regarded as a "good faith request for reasonable accommodation" under the ADA and the Rehabilitation Act. Even assuming this was protected activity here, the plaintiff has not presented evidence of a causal connection based on Nienstedt or Rogers knowing that Lachica was engaging in protected activity. *Hankishiyev v. ARUP Laboratories*, 732 Fed. Appx. 673, 677 (10th Cir. Apr. 25, 2018), *cert. denied*, 139 S.Ct. 166 (2018). And even if the plaintiff had made a prima facie case of retaliation, the court concludes the plaintiff cannot show pretext for the same reasons discussed above. Russell Stover is entitled to summary judgment on this retaliation claim.

IT IS THEREFORE ORDERED that the defendant's motion for summary judgment (ECF# 24) is granted with costs pursuant to Fed. R. Civ. P. 54(d)(1) taxed on the plaintiff.

Dated this 28th day of May 2020, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge